UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO LUIS BELEN VILLANUEVA (A# 221-415-302),<br>Petitioner,<br>v.<br>WARDEN, MESA VERDE DETENTION CENTER,<br>Respondents. | No. 1:26-cv-03806 TLN SCR<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**FACTUAL AND PROCEDURAL HISTORY**

Petitioner, a native and citizen of the Dominican Republic, was admitted into the United States on August 10, 2024, at San Juan, Puerto Rico, as a nonimmigrant visitor for pleasure with authorization to remain until February 9, 2025. ECF No. 6-1 at 2 (Form I-213). Petitioner remained in the United States beyond that period, without authorization. Id.

Immigration and Customs Enforcement ("ICE") first encountered Petitioner on August 30, 2025, when he allegedly assisted his father-in-law in escaping from ICE custody. ECF No. 6-1 at 2. On November 5, 2025, as part of a targeted enforcement operation, ICE agents encountered Petitioner as the driver of a vehicle transporting his father-in-law. Id. The agents instructed

Petitioner to exit the vehicle. Petitioner reversed the vehicle into a government owned vehicle, causing an impact. Id. Due to Petitioner's resistance, ICE agents used compliance techniques to place him into custody. Id. On the same day, the Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear ("NTA"), administratively charging him as deportable under 8 U.S.C. § 1227(a)(1)(b) (visa overstay). ECF No. 6-4.

Petitioner received a custody redetermination hearing before an immigration judge ("IJ") on December 19, 2025, pursuant to 8 C.F.R. § 1236.1. ECF No. 6-5. Petitioner was represented by counsel. Id. at 1. The IJ denied bond, citing "Danger, flight risk, and discretion." Id. Petitioner waived appeal. Id. at 2. A second hearing was convened on April 20, 2026, at Petitioner's request. ECF No. 6-6. Petitioner was again represented by counsel. Id. at 1. The IJ denied Petitioner's request, finding that he "has failed to establish a change in circumstances."[1] Petitioner reserved appeal, but it does not appear that he has filed an appeal. Petitioner remains detained in the Mesa Verde Detention Center, within this judicial district. ECF No. 1 at 1 at 1.

Petitioner, proceeding pro se, filed the instant § 2241 petition on May 18, 2026, raising two claims for relief. ECF No. 1. Petitioner challenges the outcome of the two bond hearings under the Due Process Clause of the Fifth Amendment. Id. at 6. He alleges that that the IJ denied bond based on "erroneous and unproven allegations of danger to the community and flight risk" and erred in refusing to consider change circumstances, particularly his pending Form I-918A application (Petition for Qualifying Family Member of U-1 Recipient) with USCIS. Id. Petitioner further alleges humanitarian crisis and irreparable harm to his minor children from his continued detention. Id. By way of relief, Petitioner seeks his immediate release or, in the alternative, a constitutional bond hearing.

Respondent acknowledge Petitioner is detained under 8 U.S.C. § 1226(a) but maintains his detention satisfies due process because he has received two meaningful opportunities to be heard by an IJ while represented by counsel. ECF No. 6 at 5-6. Respondent further argues that

---

[1] It appears the IJ convened this hearing pursuant to 8 C.F.R. § 1003.19(e), which states: "After an initial bond redetermination, a[ noncitizens'] request for a subsequent bond redetermination shall be made in writing and shall be considered only upon a showing that the [noncitizen's] circumstances have changed materially since the prior bond redetermination."

the Court should dismiss the petition for failure to exhaust administrative remedies because Petitioner did not appeal the IJ's rulings to the Board of Immigration Appeals ("BIA"). Id. at 4-5. After the matter was submitted, the undersigned requested the audio recordings and evidence from Petitioner's two bond hearings to ensure a complete record. ECF No. 11.

## LEGAL STANDARDS

### I. Administrative Exhaustion

"The exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (citing Singh v. Holder, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011)). Courts may require exhaustion as a prudential matter when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (quoting Noriega-Lopez v. Ashcroft, 335 F.3d 874, 881 (9th Cir. 2003)). "If a petitioner fails to exhaust prudentially required administrative remedies, then 'a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies,'" unless exhaustion is excused. Hernandez, 872 F.3d at 988 (citing Leonardo v. Crawford, 646 F.3d 1157, 1161 (9th Cir. 2011)). The exhaustion requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004).

### II. Constitutional Challenges to Bond Denials

The undersigned liberally construes the petition as raising a constitutional challenge to the outcome of Petitioner's two bond hearings. See Laws v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (requiring liberal construction of pro se habeas filings). In constitutional challenges to an IJ's detention determination, a habeas court generally reviews mixed questions of fact and law under an "abuse of discretion" standard. Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024).

"[A]buse of discretion" review does not involve "reweigh[ing] evidence" but rather determining whether the IJ "applied the correct legal standard." Id. (citation and quotations omitted). In other words, "[i]n reviewing the IJ's determination, a district court['s] . . . review is limited to whether the IJ's decision 'reflects clear legal error or is unsupported by sufficient evidence.'" Quan v. Barr, No. 20-cv-08118-LB, 2021 WL 308610 at *4 (N.D. Cal. 2021) (quoting Hilario Pankim v. Barr, No. 20-CV-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020) (internal citation and quotation omitted)). The reviewing court must bear in mind that "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." Hernandez, 872 F.3d 976, 981 (9th Cir. 2017). Moreover, a habeas court reviews pure questions of law de novo. See Singh v. Holder, 638 F.3d 1196, 1202-03 (9th Cir. 2011).

"To determine whether [a noncitizen] is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent." Martinez, 124 F.4th at 783 (citing Matter of Guerra, 24 I. & N. Dec. 37 (BIA 2006), abrogated on other grounds by Hernandez-Lara v. Lyons, 10 F.4th 19, 41 (1st Cir. 2021)). "The nine factors an IJ 'may' consider 'include any or all of the following:' (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen's] manner of entry to the United States." Id.

## DISCUSSION

### I. First Bond Hearing (Dec. 19, 2025)

#### A. Bond Proceedings

Because the IJ, Jorge Pereira, did not issue a written memorandum, the Court's reivew

will focus on the audio recording and Plaintiff's evidence.[2] ECF No. 14. Petitioner appeared at the bond hearing with counsel. The Parties agreed there were no jurisdictional issues due to Petitioner's visa overstay status. Id. at 1:18-23. The hearing lasted roughly ten minutes. Plaintiff's evidence consisted of his Passport and Visa, a psychological report for his daughter, financial sponsor materials, and letters of support. ECF No. 20-1.

Petitioner's counsel argued bond was appropriate because he has committed no crimes and has no arrests. Id. at 1:38-44. Counsel acknowledged Petitioner's only available relief was voluntary departure but that his family ties present compelling reasons for release. Petitioner's spouse, who was pregnant at that time, is in removal proceedings and on an ankle monitor in San Juan, Puerto Rico. Id. at 1:45-55. Their two minor children reside in Puerto Rico and suffered trauma from their father's detention and from witnessing their mother's arrest by ICE. Id. at 1:56-2:16. Counsel admitted his recent entry could be considered a flight risk but insisted it could be mitigated through reasonable bond and electronic monitoring. Id. at 2:17-2:43.

Counsel also addressed an Immigration Records Management ("IRM") printout the government filed at 10:00 p.m. the night before the hearing that alleged Petitioner tried to help his father-in-law escape from ICE custody and crashed into an ICE vehicle in the process. Counsel argued that the IJ should give the unsigned printout "little or no weight" because it is not an I-213 entitled to a presumption of correctness. ECF No. 14 at 2:44-3:35. The IJ expressed concern with the printout's content but granted Counsel's request to put Petitioner under voir dire and explain what happened during the incident. Id. at 3:36-4:32.

Counsel for the government began to ask Petitioner questions regarding the incident in which ICE detained his father-in-law. 4:33-7:55. Petitioner answered slowly without providing factual enhancement. Id. The IJ, apparently growing impatient, interrupted and read Petitioner the details described in the printout that he "tried to escape" and "collided with their car." Id. at 7:56-8:11. Petitioner responded that ICE agents strangled him during the incident and ICE agents

---

[2] Had Petitioner appealed the bond determinations, the BIA would have required the IJ to provide "a written decision fully explaining why Petitioner was denied bond." Martinez v. Scott, No. 2:25-CV-01538-TSZ-GJL, 2025 WL 2689844, at *5 (W.D. Wash. Aug. 27, 2025), report and recommendation adopted, No. C25-1538 TSZ, 2025 WL 2689066 (W.D. Wash. Sept. 19, 2025).

rammed into his car. Id. at 8:48-9:03. The IJ stopped the questioning and declared he was denying bond. "You haven't been here that long," he stated, "and it does appear that you refused to get out of the car according to what ICE has written down." Id. at 9:04-21. The IJ summarized that Petitioner had not demonstrated he was not a danger to the community, was a risk of flight, and denied as a matter of discretion. Counsel for both parties waived appeal.

**B. Analysis**

The IJ did not abuse his discretion in determining Petitioner presented a risk of danger to the community based on his alleged attempt to help his father flee immigration officials. The Ninth Circuit has found similar conduct to be relevant to the IJ's analysis. See Martinez, 124 F.4th at 783 (when determining whether a noncitizen is a flight or danger risk, an IJ may consider "any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities") (citing Matter of Guerra, 24 I. & N. Dec. 37). Petitioner bore the burden of proof in the § 1226(a) hearing, see Rodriguez Diaz v. Garland, 53 F.4th 1189, 1195 (9th Cir. 2022), but did not offer any documentary evidence regarding the incident. Moreover, the IJ recognized the unreliability of the government's last-minute IRM printout containing ICE's version of events and put Petitioner under oath to explain what happened. Despite several minutes of questioning from the government's counsel and the IJ (which were relayed to Petitioner by a Spanish language interpreter), Petitioner did not refute that he refused to get out of the car or that he was helping his father-in-law escape immigration authorities. Petitioner's counsel did not seek to redirect Petitioner's testimony on this incident.

The IJ's decision to cut off questioning out of obvious frustration gives the undersigned some pause. But having carefully reviewed the audio recording and hearing the record, the undersigned cannot say that the IJ applied the incorrect legal standard or that Petitioner did not receive due process during the proceeding. Accordingly, the undersigned recommends that Petitioner's habeas challenge to his first bond hearing be denied.

**II. Second Bond Hearing (Apr. 20, 2026)**

**A. Bond Proceedings**

Petitioner requested a second bond hearing on account of changed circumstances pursuant

to 8 C.F.R. § 1003.19(e). Petitioner was represented by a different counsel and a different IJ, Christina Martyak, presided. The hearing also lasted approximately ten minutes. The purported new evidence Petitioner presented in this second hearing consisted of records relevant to his wife's receipt of a U-Visa, including records relating to the criminal complaint underlying his wife's U-Visa application and receipts for the family's, including Petitioner's, derivative Form I-918A application. See ECF No. 20-9.

The IJ began by summarizing Petitioner's immigration history and the outcome of the first bond hearing. She then asked Petitioner's counsel for the changed circumstances. ECF No. 15 at 0:21-33. Petitioner's counsel explained that Petitioner did not have all the supporting documentation at the time of first hearing, including a sponsor letter, a statement from his wife regarding her then high-risk pregnancy, and information regarding his minor children. Counsel also informed the IJ that Petitioner's wife was the victim of sexual assault shortly after they arrived in Puerto Rico and received a U-Visa on March 13, 2026. She further explained that the family overstayed their visa because they were cooperating with law enforcement after the sexual assault. Id. at 0:34-3:20.

The IJ again inquired into changed circumstances. Regarding flight, counsel confirmed that Petitioner does not have any relief before the immigration court. ECF No. 15 at 3:42-4:26. When the IJ asked whether circumstances have changed regarding the dangerousness finding related to the encounter with ICE, Petitioner's counsel again pointed to the documentation that was not available during the first hearing. Id. at 4:27-5:02. Neither counsel knew whether Petitioner had been criminally charged for the encounter with ICE or, if so, whether the charges are pending. Id. at 5:05-6:48. The IJ determined that there were no changed circumstances as to dangerousness based on that incident, and that Petitioner's wife's U-Visa is not immigration relief that constitutes changed circumstances as to flight. Id. at 6:49-7:18.

**B. Analysis**

Under 8 C.F.R. § 1003.19(e), a noncitizen may seek an additional bond hearing before an IJ "whenever they experience a material change in circumstances warranting a redetermination of custody status." Rodriguez Diaz, 53 F.4th at 1195. Petitioner argues that the IJ "failed to weigh"

his pending Form I-918A application, for which he had a biometrics processing appointment for the application scheduled for May 13, 2026.[3] ECF No. 1 at 6. Petitioner submitted his Form I-918A receipt dated March 13, 2026, to the immigration court, see ECF No. 20-9 at 17, but the audio recording reveals that IJ did not address his application directly, and simply rejected his wife's receipt of a U-Visa as a basis for materially changed circumstances.

On habeas review, a district court may consider whether an IJ misinterpreted or failed to consider probative evidence. See Cole v. Holder, 659 F.3d 762, 771-72 (9th Cir. 2011) (holding in another context of IJ decision making "where potentially dispositive testimony and documentary evidence is submitted, the BIA must give reasoned consideration to that evidence"); Ramos v. Sessions, 293 F. Supp. 3d 1021, 1030 (N.D. Cal. 2018) (finding "IJ legally erred because she did not fully consider the evidence before her," including that the petitioner demonstrated significant changed circumstances such as meaningful rehabilitation as shown by letters from community members, petitioner's testimony showing dedication to sobriety, and by entering DUI therapy which differed meaningfully from previous therapy), vacated and remanded sub nom. Ramos v. Garland, No. 18-15884, 2024 WL 933654 (9th Cir. Mar. 1, 2024). The IJ's failure to consider Petitioner's Form I-918A application was legal error. The application receipt, dated March 13, 2026, was new evidence not available at his first hearing and relevant to the materially-changed-circumstances analysis. The fact that IJ's position as to this specific evidence is not clear from this record shows that her 8 C.F.R. § 1003.19(e) analysis was an abuse of discretion. See Cole, 659 F.3d at 771 (explaining that if "the agency did not consider all the evidence before it . . . the decision cannot stand.").

Accordingly, because the IJ failed to consider Petitioner's Form I-918A application in determining the presence of materially changed circumstances, the undersigned finds her decision was an abuse of discretion and recommends that the petition be granted. The appropriate due process remedy is order a new hearing at the immigration court to consider whether Petitioner's evidence constitutes materially changed circumstances pursuant to 8 C.F.R. § 1003.19(e). See

---

[3] Petitioner states in a subsequent filing that he had another biometrics processing appointment for that application on August 24, 2026. No. 17 at 1.

Lopez Reyes v. Bonnar, No. 18-CV-07429-SK, 2018 WL 7474861, at *10 (N.D. Cal. Dec. 24, 2018) (holding that due process compelled reconsideration of the petitioner's request for a new bond hearing "since the IJ did not fully consider all the facts constituting the change in circumstances to determine if there is a 'material' change in circumstances").

Finally, waiver of prudential exhaustion is appropriate based on irreparable harm. Petitioner has put forth evidence that his detention is causing hardship to his family and that he missed the birth of his third child. ECF Nos. 9, 10. Even if Petitioner had appealed the IJ's decision to the BIA, he would likely face many more months detention without a proper bond rehearing while pursuing a resolution. See Lopez Reyes, 2018 WL 7474861, at *7 (finding that "waiting for the BIA appeal, which may take up to five months to adjudicate, 'will cause [petitioner] irreparable harm by prolonging his detention without a hearing, which could ultimately result in his release from detention.'" (quoting Cortez v. Sessions, 318 F. Supp. 3d 1134, 1138-39 (N.D. Cal. 2018))). Further, requiring Petitioner to request another hearing pursuant to 8 C.F.R. § 1003.19(e) when the IJ failed to properly consider his new evidence the first time would be futile. Singh v. Barr, 400 F. Supp. 3d 1005, 1013 (S.D. Cal. 2019) (finding exhaustion via 8 C.F.R. § 1003.19(e) futile where "[the petitioner's] basis for seeking another determination is that the IJ applied the wrong legal standards to an unchanged set of facts").

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) be GRANTED.

2. Respondent is ordered to provide Petitioner with a bond hearing before an immigration judge pursuant to 8 C.F.R. § 1003.19(e) within fourteen (14) days of issuance of any final order in this case, and with at least seven (7) days of advance notice to Petitioner and Petitioner's counsel. At the hearing, Petitioner's Form I-918A application must be considered.

3. Respondents are further directed to file a notice certifying compliance with the above provision within seven (7) days from the date of the bond hearing.

4. If Petitioner is granted release on bond, Respondents shall return all of Petitioner's documents and possessions at the time of release.

5. This order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 28, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE